UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/09/2022
```

-----------------------------------------------------------------------X
:
LIVEWIRE ERGOGENICS, INC. and                :
BILL HODSON,                                  :
:
     Petitioners,            :    22-cv-2382 (LJL)
:
  -v-                                    :   MEMORANDUM &
:     ORDER
JS BARKATS PLLC,                              :
:
     Respondent.            :
:
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

  Petitioners LiveWire Ergogenics, Inc. ("LiveWire") and Bill Hodson ("Hodson" and,

together with LiveWire, "Petitioners" or the "LiveWire Parties") move for an order confirming

the arbitration award against respondent JS Barkats PLLC ("Respondent" or "JSB").  Dkt.

No. 18.

  For the following reasons, the motion to confirm the arbitration award is granted.

## BACKGROUND

  LiveWire is a Nevada corporation headquartered in Anaheim, California whose stock is

publicly traded.  Dkt. No. 1 ¶ 39.  Hodson is LiveWire's Chief Executive Officer.  *Id.* ¶ 30.  JSB

is a New York professional limited liability company located in New York whose managing

member is Sanny Joseph Barkats, also known as Sunny Joseph Barkats ("Barkats").  *Id.* ¶¶ 2,

31–32.  Barkats was LiveWire's lawyer.  The instant motion to confirm an arbitration award is

the latest chapter in the litigation arising from Barkats's brokering of a self-interested loan

between American E Group LLC and LiveWire, which the Honorable Gregory H. Woods of this

Court found to be usurious.  *See id.* ¶¶ 13, 65; *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 2020

WL 469312 (S.D.N.Y. Jan. 28, 2020), *aff'd*, 2022 WL 2236947 (2d Cir. June 22, 2022)

("*LiveWire III*").

By retainer letter dated November 3, 2015 (the "Retainer Agreement"), LiveWire

retained JSB and its "Securities/Capital Markets group" as counsel to represent LiveWire in

connection with LiveWire's "ongoing reporting obligations Securities Exchange Act of 1934

(the '1934 Act') and general corporate governance as well as [to] assist with financing."  Dkt.

No. 1-1 at 1.  The purpose of the engagement, as stated in the retainer letter, was to assist

LiveWire with all work "ancillary" to its needs under the 1934 Act, including the "actual

preparation, drafting, and filing of [LiveWire]'s Annual, Periodic and other reports . . . to be filed

with the Securities and Exchange Commission" and to assist LiveWire in "identifying sources of

financing" up to $50,000.  *Id.* at 2–3.  It appears that the real purpose of the engagement, at least

from the perspective of JSB and Barkats, was to lull LiveWire into agreeing to a usurious loan

made by an entity owned by Barkats and his wife.  *See* Dkt. No. 1 ¶ 65.  LiveWire agreed to pay

JSB $3,000 per month (with $3,000 upfront) and to provide it with 30,000,000 shares of

LiveWire common stock, not to exceed $40,000.  Dkt. No. 1-1 at 1–2.  With respect to the

financing, the Retainer Agreement stated: "any conflicts shall be properly be [sic] waived by

[LiveWire] in the event the funds are procured through another entity the firm may represent or

partially own."  *Id.*

An entity named American E Group LLC ("AEG"), whose members were Barkats and

his wife Elana Michelle Hirsch, also known as Elana Barkats or Elana Hirsch ("Hirsch"), loaned

LiveWire $30,000.  Dkt. No. 1 ¶ 2; Dkt. No. 1-3 at 1.  Judge Woods has described the terms of

the promissory note (the "Note") signed by LiveWire in connection with the loan as follows:

> Defendant promised to repay the principal amount of the loan six months after the
> date of the Note (the "Maturity Date").  Defendant also agreed to pay interest on

the Note at a rate of 20% per annum, due in full on the Maturity Date. The Note also required Defendant to pay additional consideration for the loan through the issuance of stock to Plaintiff. The Note provided that:

> Moreover, as additional consideration for this Note, the Borrower will give to the Lender restricted shares of the Borrower equal to US$50,000.00 (the "Restricted Shares") that will be convertible to freely tradeable shares on the Maturity Date. The Borrower will provide to the Lender, at the Borrower's expense, an opinion of counsel stating that, on the Maturity Date, the Restricted Shares are freely transferrable pursuant to SEC Rule 144A . . . .

The Note set forth a number of events of default and described the consequences of those defaults. Failure by Defendant to pay the principal and interest on the Note within 30 days after the Maturity Date constituted an event of default. The Note included a particularly rich bounty for Plaintiff following the occurrence of such a default: "if an Event of Default shall occur, then the Restricted Shares shall be freely transferable and this Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness.

*LiveWire III*, 2020 WL 469312, at *2 (internal quotation marks omitted) (quoting *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 2018 WL 5447541, at *1 (S.D.N.Y. Oct. 29, 2018) ("*LiveWire I*")).

LiveWire failed to pay the $30,000 plus interest at a rate of 20% on the Maturity Date and, on May 3, 2018, AEG sued LiveWire in this Court alleging that LiveWire had breached its duty to repay a Note. *See LiveWire I*, 2018 WL 5447541, at *2. In December 2018, LiveWire filed an answer and counterclaim and a third-party complaint against AEG, Barkats (AEG's controlling member), Hirsch (AEG's majority member), and JSB. Dkt. No. 1 ¶ 2. Ultimately, JSB and Barkats successfully moved to compel arbitration pursuant to the Retainer Agreement between LiveWire and JSB. *Id.* ¶¶ 6, 12. The Retainer Agreement provided:

> Any dispute shall be resolved by confidential arbitration as follows: (1) If and to the extent that the New York Fee Dispute Resolution Program (Part 137 of 22 NYCRR) providing for informal and expeditious resolution of fee disputes between attorneys and clients is applicable, then the rules and procedures of such Fee Dispute Resolution Program shall apply. (2) If such Fee Dispute Resolution Program is not applicable to any such dispute, controversy or claim, then the arbitration shall be conducted in New York City in accordance with the

> Commercial Arbitration Rules of the American Arbitration Association, and any award issued in such arbitration shall be enforceable in any court with jurisdiction. A copy of the New York Fee Dispute Resolution Program is available on request.

Dkt. No. 1-1 at 4.  The Retainer Agreement does not have an explicit choice of law provision and does not indicate how attorneys' fees are to be apportioned in disputes between the parties.

On July 19, 2019, JSB initiated the arbitration ("Arbitration") by filing a demand for arbitration with the American Arbitration Association ("AAA").  Dkt. No. 1 ¶ 8.  JSB alleged a breach of the Retainer Agreement and sought to collect its legal fees billed in connection with introducing LiveWire to AEG.  *Id.* ¶ 10.  Pursuant to JSB's requests, the arbitrator held the Arbitration in abeyance throughout 2020 as discovery progressed in the civil case before Judge Woods.  *Id.* ¶ 51.  On January 13, 2020, Judge Woods issued a memorandum opinion and order granting the motion of JSB and Barkats to compel arbitration of the claims filed against them in the civil litigation and dismissing the third-party claims against them.  *See* Dkt. No. 1 ¶ 12; *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 394 (S.D.N.Y. 2020) ("*LiveWire II*").  On January 28, 2020, Judge Woods dismissed all claims against the LiveWire Parties on the grounds that the Note—which demanded not just 20% interest on the $30,000 principal but an additional $50,000 in LiveWire's restricted stock—was criminally usurious and unenforceable, leaving only the counterclaims against AEG and the third-party claims against Barkats's wife.  *See* Dkt. No. 1 ¶ 13; *LiveWire II*, 2020 WL 469312, at *12.

In February 2021, the LiveWire Parties counterclaimed in the Arbitration, asserting the same claims they had previously asserted in the civil action:  constructive fraud, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and legal malpractice.  Dkt. No. 1 ¶¶ 11, 52.  In July 2021, after JSB and Barkats were dismissed from the federal action in favor of arbitration, the LiveWire Parties voluntarily dismissed their claims against AEG and against Hirsch.  *Id.* ¶ 15.

In October 2021, a four-day hearing was held in the Arbitration before arbitrator Dani Schwartz (the "Arbitrator"). *Id.* ¶ 17. JSB participated actively, submitting pre- and post-hearing briefs, and offering exhibits and live testimony. *Id.* ¶¶ 18, 54–62. Three of the four days were dedicated to JSB's case-in-chief. *Id.* ¶ 57. On March 10, 2022, the Arbitrator issued an award (the "Award") in favor of the LiveWire Parties, granting their request for relief and denying JSB's claim for payment under the Retainer Agreement. *Id.* ¶ 19. It is worth quoting the Arbitrator's findings at length:

> Although the retainer agreement provided that [JSB] was being engaged, in part, to secure $50,000 in funding for Livewire, [JSB] ultimately obtained $30,000.00 in funding for Livewire . . . from an entity . . . whose majority owner was Mr. Barkats's wife, and whose minority owner was Mr. Barkats himself, according to Mr. Barkats's testimony. The Funding and terms of repayment to Lender were memorialized by a promissory note (the "Note"). The Note required Livewire to repay the $30,000.00 Funding in full in six months at an annual interest rate of 20%, and required Livewire to issue $50,000.00 worth of Livewire's stock as "additional consideration" for the Funding (the "Note Shares").

> Mr. Barkats's and his wife's interest in Lender were conflicts of interest with respect to [JSB's] representation of Livewire in negotiating and preparing the Note under which Livewire was the obligor and Lender the obligee. There was conflicting testimony, evidence, and argument about the extent to which [JSB] disclosed this conflict of interest to [the LiveWire Parties], about whether whatever disclosure occurred was legally sufficient, and about whether the preemptive waiver of conflicts of interest set forth in [JSB's] retainer agreement was valid or legally sufficient. . . .

> I find that [the LiveWire Parties] proved their legal malpractice and breach of fiduciary duty counterclaims by a preponderance of the evidence. [JSB's] argument that Livewire's claims for legal malpractice must be dismissed due to Livewire's failure to present expert testimony is without merit. Here, there is no need for expert testimony as to the required standard of professional care and skill, nor is there any need for expert testimony on whether [JSB] deviated from this standard, given a federal court's determination that the Note – which was the product of [JSB's] work for Livewire (and in which [JSB's] principal and his wife had pecuniary interests)—was criminally usurious and void. It should go without saying that it is a deviation from the standard of professional care and skill for a lawyer to provide work product that is ultimately determined to be criminally unlawful, particularly when the work product is unlawful precisely because of the unenforceably excessive payment terms that would benefit the lawyer and his wife. . . .

Further, the conflicting testimony about whether [JSB] made sufficient disclosure to [the LiveWire Parties] of the conflict presented by Mr. Barkats's and his wife's interest in Lender is beside the point.  Under the circumstances present here, [JSB's] drafting and preparation of the criminally usurious Note in which Mr. Barkats and his wife had a pecuniary interest was itself wrongful conduct, breach of fiduciary duty, and malpractice sufficient to vitiate the obligation to pay for any of the legal services that [JSB] rendered to Livewire, and to defeat [JSB's] claims. . . .

In support of their claim for damages, [the LiveWire Parties] presented their invoices for legal services, costs, and expenses incurred in connection with the Federal Litigation and this arbitration.  [The LiveWire Parties'] invoices for such sums total $133,768.08 in connection with this arbitration, and $254,977.83 in connection with the Federal Litigation.  All of these fees were incurred in connection with the unenforceable and criminally usurious Note, and the dispute brought by [JSB] over the retainer agreement (pursuant to which [JSB] prepared the criminally usurious Note in which Mr. Barkats and his wife held pecuniary interests).  As such, I hold that the reasonable amount of legal fees, costs, and expenses incurred by [the LiveWire Parties] in connection with this arbitration . . . and the legal fees, costs, and expenses incurred by [the LiveWire Parties] in connection with the Federal Litigation, are awardable to [the LiveWire Parties] as damages.  In addition, I hold that the Arbitration Legal Fees are awardable to [the LiveWire Parties] as the prevailing parties herein.

Dkt. No. 1-3 at 1–3.

The Arbitrator awarded the LiveWire Parties (1) $330,434.02 in consequential damages, namely legal services, costs, and expenses incurred in connection with the litigation in federal court and the Arbitration; (2) $6,000 in disgorgement; and (3) $16,005 in AAA fees, and ordered JSB to pay no later than April 24, 2022.  *See* Dkt. No. 1 ¶¶ 66–67; Dkt. No. 1-3 at 3.  The Arbitrator calculated the award as follows:  He applied a 15% reduction to the legal invoices because they showed block billing, some duplication of work, and "partners billing for work that lower-billing attorneys could have performed."  Dkt. No. 1-3 at 3.  The Arbitrator found that none of these actions were "egregious" and "most of [them are] . . . fairly common in the practice of law."  *Id.*  The disgorgement of $6,000 was for the payment that Respondent received in connection with the Note.  *Id.*

6

## PROCEDURAL HISTORY

Petitioners filed this petition to confirm the arbitration award ("Petition") on March 23, 2022.  Dkt. No. 1.  Respondent failed to appear and a clerk's certificate of default was entered.  Dkt. No. 11.  Finally, on October 27, 2022, Respondent filed its response to the Petition.  Dkt. No. 17.

On November 4, 2022, Petitioners filed this motion to confirm the arbitration award along with a supporting memorandum of law and a declaration in support of the motion.  Dkt. Nos. 18–20.  Respondent filed its memorandum of law in opposition to the motion on November 17, 2022.  Dkt. No. 21.  On November 25, 2022, Petitioners filed a reply memorandum in support of the motion and a declaration in support of the motion.  Dkt. Nos. 22–23.

## DISCUSSION

I.    **Confirmation of the Arbitration Award**

Petitioners move to confirm the Award.  Section 9 of the Federal Arbitration Act ("FAA") provides that an application may be made to a court for an order confirming an arbitration award and the "court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA.  9 U.S.C. § 9.  If the parties in their agreement have specified the court to which such an application may be made, then the application must be filed with that court; "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."  *Id.*  Section 10(a) provides that an award may be vacated only on limited grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; and

(4) where the arbitrators exceeded their powers, or so imperfectly executed them so that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a).  "In addition, [the Second Circuit] has 'held that the court may set aside an arbitration award if it was rendered in manifest disregard of the law.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011)).  Under these standards, "vacatur of arbitral awards is extremely rare." *Hamerslough v. Hipple*, 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012). An award may be modified under Section 11 of the FAA: "(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;] (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; and] (c) Where the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11.

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984).  The review of arbitration awards is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993).

Respondent does not invoke Sections 10(a)(1), (2), or (3) of the FAA in resisting confirmation.  Nor could it readily have done so.  Respondent initiated the arbitration provision and then moved to compel arbitration pursuant to the Retainer Agreement rather than litigating in federal court.  Petitioner's counterclaims plainly fell within the arbitration clause of the Retainer Agreement.  As Judge Woods concluded in granting Respondent's motion and holding that the counterclaims must be arbitrated, the Retainer Agreement required "*any* dispute" be "resolved by confidential arbitration.  This dispute surely qualifies as 'any dispute.'"  *LiveWire II*, 432 F. Supp. 3d at 398 (citation omitted and alterations accepted) (emphasis in original).  The Arbitrator heard all of the evidence pertinent and material to the dispute.  JSB called both Hodson and Barkats to testify during its case-in-chief.  Dkt. No. 1 ¶ 60.  The Arbitrator admitted eighty-two exhibits offered by JSB, and accepted deposition testimony in lieu of several witnesses' testimony.  *Id.* ¶¶ 58–59.  There is no evidence or allegation that the award was procured by corruption, fraud, or undue means or that the Arbitrator had evident partiality or corruption.  *See* 9 U.S.C. § 10(a)(1), (2).  Further, there is no evidence that the Arbitrator refused to hear pertinent evidence or misbehaved in any way.  *See id.* § 10(a)(3).  The Arbitrator rendered a careful three-page award evaluating the evidence and arguments in a manner that on its face was careful, balanced, and unbiased.

Respondent argues instead that the Arbitrator exceeded his powers by awarding Petitioners attorneys' fees for the federal court proceeding to which Respondent was not a party and because an award of attorneys' fees under New York law may only be made pursuant to a statute, agreement, or court rule authorizing such fees.  Dkt. No. 21 at 9.  Respondent also argues that the Arbitrator's award is inconsistent with a later decision of the United States Court of Appeals for the Second Circuit, in which the Second Circuit denied Petitioner's request for

sanctions under Federal Rule of Appellate Procedure 38 in AEG's appeal of Judge Woods's order dismissing AEG's claim under the Note. *Id.* at 4–5. Respondent's arguments lack merit.

When a respondent argues that the arbitrator exceeded her powers under Section 10(a)(4) of the FAA, the focus of the inquiry is "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided that issue." *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)); *see also Subway International, B.V. v. Subway Russia Franchising Co., LLC*, 2021 WL 5830651, at *4 (S.D.N.Y. Dec. 8, 2021); *LTF Construction Co., LLC v. Cento Solutions Inc.*, 2020 WL 7211236, at *3 (S.D.N.Y. Dec. 7, 2020). "This is an extremely deferential standard of review." *Jock*, 942 F.3d at 622.

Additionally, the Second Circuit has held that review of an arbitration award for manifest disregard of law is "severely limited." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002) (Sotomayor, J.) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir. 1989)). To vacate an arbitration award, the court "must find 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Id.* (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967)). Vacatur under the manifest disregard standard is limited to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (internal quotation marks omitted) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)). "A court may vacate an arbitral award based on manifest disregard only upon a finding that '(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and

(2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Precision Castparts Corp. v. Schultz Holding GmbH & Co. KG*, 2020 WL 4003578, at *2 (S.D.N.Y. July 15, 2020) (quoting *Zurich Am. Ins. Co.*, 811 F.3d at 589). "The test has sometimes been described in three parts, as requiring a demonstration that (1) 'the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators'; (2) 'the law was in fact improperly applied, leading to an erroneous outcome;' and (3) 'the arbitrator must have known of [the law's] existence, and its applicability to the problem before him.'" *Id.* (quoting *T.Co Metals*, 592 F.3d at 339).

Respondent's argument turns on the American Rule for apportioning attorneys' fees as made applicable to arbitral proceedings under Section 7513 of the New York Civil Practice Law and Rules ("CPLR 7513"). The American Rule provides that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs. v. AGS Computers*, 74 N.E.2d 903, 904 (N.Y. 1989). CPLR 7513 states that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, *not including attorney's fees*, incurred in the conduct of the arbitration, shall be paid as provided in the award." N.Y. C.P.L.R. § 7513 (emphasis added). Interpreting CPLR 7513, New York courts have held that fee-shifting is impermissible in arbitrators except under three circumstances: "(1) where a statute provides for such an award; (2) where it was authorized by an express provision in the agreement; or (3) where it is 'unmistakably clear' that both parties intended such an award." *Steyn v. CRTV, LLC*, 103 N.Y.S.3d 415, 420 (1st Dep't 2019) (citations omitted); *see also Coby Elecs. Co, Ltd. v. Toshiba Corp.*, 968 N.Y.S.2d 490, 492 (1st Dep't 2013). Respondent also invokes Rule 47(d)(ii) of the AAA Rules, which provides: "The

11

award of the arbitrator(s) may include: . . . ii. an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."  AAA Rule 47(d)(ii).  But this argument misses the expansive authority accorded to arbitrators by the FAA in fashioning remedies.

The Second Circuit confronted an almost identical issue in *PaineWebber Inc. v Bybyk*, 81 F.3d 1193 (2d Cir. 1996).  The respondents in that case had initiated arbitration against their investment advisors through which they sought several remedies, including attorneys' fees.  *Id.* at 1195.  The petitioner, PaineWebber, brought an action seeking to stay the arbitration and to prevent the respondents from seeking attorneys' fees; respondents removed the action to federal court, and the district court dismissed the petitioner's complaint.  *Id.* at 1196.  The Second Circuit affirmed.  *Id.* at 1202.  Significantly for this case, the Circuit rejected PaineWebber's argument that the respondents could not seek attorneys' fees in the arbitration because the agreement between the parties provided that New York law governed and because New York CPLR 7513 prohibits claims for attorneys' fees to be submitted to an arbitrator unless such claims are expressly provided in the underlying arbitration agreement.  *Id.*  The Circuit noted that the parties' agreement provided that "any and all controversies" would be submitted to arbitration and contained "no express limitation with respect to attorneys' fees."  *Id.*  In light of that broad language, the court held that the arbitrator could hear the respondents' claim for attorneys' fees, notwithstanding CPLR 7513: "[A] choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees."  *Id.*; *see also Stone & Webster, Inc. v. Triplefine Int'l Corp.*, 118 F. App'x 546, 549 (2d Cir. 2004) ("Even in the face of New York's

prohibition, we have held that if there is a choice of law clause selecting New York law, the parties may still arbitrate the issue of attorneys' fees.").

In the wake of *PaineWebber*, numerous courts in this District have held that CPLR 7513 does not prohibit an arbitrator in New York from granting an award of attorneys' fees when such an award is otherwise within the arbitrator's powers. *See, e.g.*, *NS United Kaiun Kaisha, Ltd. v. Cogent Fibre Inc.*, 2015 WL 4393060 at *8 (S.D.N.Y. July 14, 2015); *In re Arb. Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Administrators*, 785 F. Supp. 2d 411, 422–423 (S.D.N.Y. 2011) (holding that that the arbitrator had the authority to award attorneys' fees as the arbitration clause was broad); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino*, 2007 WL 895767, at *18 (S.D.N.Y. Mar. 23, 2007) ("The award of attorneys' fees also is not barred by New York C.P.L.R. § 7513"). *NS United Kaiun Kaisha, Ltd. v. Cogent Fibre Inc.* is illustrative. The respondent there argued that the arbitrators exceeded their authority and acted in manifest disregard of the law by awarding attorneys' fees because (1) the arbitration clause did not explicitly authorize such an award; (2) New York law, and in particular CPLR 7513, prevented the arbitrators from awarding attorneys' fees; and (3) none of the exceptions to the American Rule against awarding fees were satisfied. *NS United Kaiun Kaisha, Ltd.*, 2015 WL 4393060, at *7. The court rejected all three arguments. *PaineWebber* "squarely" foreclosed respondent's argument that the absence of a reference to attorneys' fees in the agreement between the parties prevented the arbitrator from awarding attorneys' fees. *Id.* at *8. *PaineWebber* also foreclosed respondent's argument that CPLR 7513 prevented the arbitrators from awarding attorneys' fees; even in the face of a New York choice-of-law provision, "the FAA takes precedence over state law and allows arbitrators to award attorneys' fees when an agreement's arbitration clause is

sufficiently broad." *Id.* Finally, the arbitrator provided a "colorable" justification for why the award of fees was appropriate. *Id.* at *9.

For the same reasons, Respondent's argument here is without merit. As Judge Woods held (and as Respondent argued to him), the arbitration provision of the Retainer Agreement between the parties is broad. It covers "any dispute." Dkt. No. 1-1 at 4. It certainly is broad enough to cover a dispute regarding attorneys' fees. Under *PaineWebber*, the fact that the Retainer Agreement does not expressly permit the arbitrator to award attorneys' fees does not prevent the Arbitrator from doing so. Finally, and importantly, the Arbitrator acted well within his authority in including attorneys' fees and costs as a component of damages. The parties agreed that the Arbitration would be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" and those rules permit an award of fees when "authorized by law." AAA Rule 47(d)(ii). Under New York law, "[d]amages in a legal malpractice case are designed 'to make the injured client whole.'" *Rudolf v. Shayne, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 388 (N.Y. 2007) (quoting *Campagnola v. Mulholland, Minion & Roe*, 555 N.E.2d 611, 613 (N.Y. 1990)). "A plaintiff's damages may include 'litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct.'" *Id.* (quoting *DePinto v. Rosenthal & Curry*, 655 N.Y.S.2d 102, 103 (2d Dep't 1997)). The $254,977.83 that Petitioners incurred in relation to the federal litigation was directly related to Respondent's malpractice; Petitioners were obliged to expend this money to defend themselves against the criminally usurious, self-interested Note, which Respondent induced Petitioners to sign. Thus, the Arbitrator neither exceeded his powers in granting Petitioners' damages in the form of the fees and costs resulting from Respondent's malpractice nor did he act in manifest disregard of the law.

The $133,768.08 expended by Petitioners in connection with the Arbitration was also properly awarded by the Arbitrator.  The Second Circuit has held that "[w]here an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).  "[A] broad arbitration clause, such as the one in this case, . . . confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith and that such a sanction may include an award of attorney's or arbitrator's fees." *Id.*  Respondent initiated the Arbitration in order to collect fees and 30,000,000 shares in LiveWire that it claimed were owed under the Retainer Agreement.  *See* Dkt. No. 1-3 at 2.  As the Arbitrator concluded,

> Here, there is no need for expert testimony as to the required standard of professional care and skill, nor is there any need for expert testimony on whether [JSB] deviated from this standard, given a federal court's determination that the Note—which was the product of [JSB's] work for [the LiveWire Parties] (and in which [JSB's] principal and his wife had pecuniary interests)—was criminally usurious and void. It should go without saying that it is a deviation from the standard of professional care and skill for a lawyer to provide work product that is ultimately determined to be criminally unlawful, particularly when the work product is unlawful precisely because of the unenforceably excessive payment terms that would benefit the lawyer and his wife.

*Id.*  "Although less than a model of clarity, this paragraph . . . certainly provides a 'colorable' justification for finding that [Respondent] acted in bad faith both during the course of" its representation of Petitioners and in bringing the arbitration, and thus provides justification "for awarding attorneys' fees."  *NS United Kaiun Kaisha, Ltd.* 2015 WL 4393060, at *9.

Respondent makes two final arguments, both of which are without merit.  First, Respondent argues that because Respondent was not a party to the federal litigation, it cannot be liable for the attorneys' fees Petitioners incurred in those actions.  *See* Dkt. No. 21 at 4.  The argument is a non-sequitur.  As described above, the only reason Petitioners had to incur fees and costs in connection with the federal litigation was to minimize the damage that Petitioner's legal

malpractice caused.  It thus fell well within New York law for the Arbitrator to conclude that these fees and costs were recoverable.

Second, Respondent argues that the Arbitrator's award of fees for the federal litigation constitutes a "second bite at the apple." Dkt. No. 21 at 4.  After argument in the Second Circuit on Judge Woods's order dismissing AEG's claims, Petitioners filed a motion to collect attorneys' fees in that action.  *Id.* at 4–5.  The Second Circuit denied Petitioners' motion.  Dkt. No. 17-1. Respondent's argument misconstrues the nature of this denial.  Federal Rule of Appellate Procedure 38 permits the Court of Appeals to award damages and single or double costs to an appellee if it determines that an appeal is frivolous.  Fed. R. App. P. 38.  Putting aside the fact that the Arbitrator's award preceded the Second Circuit's denial of Petitioners' motion for sanctions—and thus definitionally could not represent a "second bite at the apple"—the award of attorneys' fees for the federal litigation was based on the damages caused to Petitioners resulting from Respondent's malpractice.  These damages exist separate and apart from the merits of AEG's action.  In contrast, any damages awarded under Federal Rule of Appellate Procedure 38 derive from the frivolous nature of AEG's appeal.  Thus, it does not follow from the fact that the Circuit decided in the exercise of its discretion not to award sanctions that the Petitioners should be prevented from being made whole for the injury it incurred as a result of Respondent's misconduct.

## II.    Request for Additional Damages

Finally, Petitioners argue that the Court should augment the damages awarded by the Arbitrator by awarding them damages for the fees and costs incurred after January 31, 2022, the last date for which the Arbitrator received their invoices.  Dkt. No. 19 at 22–23.  Since then, Petitioners have incurred additional costs in defending against AEG's Second Circuit appeal, in

prosecuting this action, and in handling a state vacatur petition that was filed by Respondent after Respondent was served with this Petition. *Id.*

Petitioners' argument is without merit. Petitioners offer no basis upon which the Court can or should award Petitioners damages for the additional costs it incurred in connection with the arbitration. The Retainer Agreement requires that all disputes be resolved by confidential arbitration, which would include the dispute as to whether Respondent should pay additional damages for the appeal. If the Arbitration were resolved prior to the Second Circuit appeal concluding, and if as a result the damages award did not include all the costs related to the appeal, then that issue should have been raised with the Arbitrator. It is not a matter for this Court to decide.

As to Petitioners' expenses incurred in connection with this Petition, Section 9 of the FAA does not provide for recovery of attorneys' fees. Still, "a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, [and] attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M. S. Meat Corp.*, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (Sullivan, J.) (internal quotation marks omitted) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

The Court declines to exercise its discretion here to award fees. Although Respondent's opposition to the motion to confirm the arbitration award lacks merit, Petitioners have not shown it was filed in bad faith.

## CONCLUSION

The motion to confirm the arbitration award is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 18.


SO ORDERED.


Dated: December 9, 2022
       New York, New York                          LEWIS J. LIMAN
                                               United States District Judge